[Civ. No. 37068. First Dist., Div. Four. Apr. 26, 1976.]

CHAD HAZELWOOD, a Minor, etc., Plaintiff and Respondent, v.
EARL B. HAZELWOOD et al., Plaintiffs and Appellants.

---

## COUNSEL

Gerstl, Gorman & Kleman and Hugo N. Gerstl for Plaintiffs and Appellants.

Marootian & Samarco, James P. Samarco and R. W. Levy for Plaintiff and Respondent.

---

## OPINION

**EMERSON, J.**\*—Appellants, claiming to be dependent parents, filed an action for damages for the wrongful death of their son, hereafter referred to as the decedent. As will be seen, the disposition of this appeal depends primarily upon the definition of the term "dependent parents" as formerly used in section 377 of the Code of Civil Procedure.[1]

The action was consolidated with a similar suit filed by decedent's widow on behalf of herself individually and as guardian ad litem for the minor child of the marriage. Decedent left no other heirs.

---

\*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

[1]Code of Civil Procedure section 377, as it existed at the time when the instant judgment was rendered, provided, in pertinent part: "When the death of a person not being a minor, or when the death of a minor person who leaves surviving him either a husband or wife or child or children or father or mother, is caused by the wrongful act or neglect of another, his heirs, and his dependent parents, if any, who are not heirs, or personal representatives on their behalf may maintain an action for damages against the person causing the death. . . ."

In 1975, section 377 was amended to read, in pertinent part: "(a) When the death of a person is caused by the wrongful act or neglect of another, his or her heirs or personal representatives on their behalf may maintain an action for damages against the person causing the death. . . . [¶] (b) For the purposes of subdivision (a), 'heirs' mean only the following: [¶] (1) Those persons who would be entitled to succeed to the property of the decedent according to the provisions of Division 2 (commencing with Section 200) of the Probate Code, and [¶] (2) Whether or not qualified under paragraph (1), if they were dependent on the decedent, the putative spouse, children of the putative spouse, stepchildren, and parents. As used in this paragraph, 'putative spouse' means the surviving spouse of a void or voidable marriage who is found by the court to have believed in good faith that the marriage to the decedent was valid."

A settlement of the actions was offered, and the widow filed a petition for compromise of the child's claim and for distribution of the settlement proceeds to herself and the child only. Appellants filed a counterpetition asking that the proceeds be distributed to them and the child, and that the widow be awarded nothing. The trial court issued an "order and decree" approving the compromise of the child's claim and distributing the entire settlement proceeds to him, less an amount for attorney's fees and costs. Decedent's parents appeal from the order and decree, which we shall refer to as the judgment.[2][3] The widow does not appeal.

The right of appellants to maintain their action for wrongful death and, therefore, to share in the settlement proceeds must be founded upon their status as dependent parents. They are not heirs of the decedent. (Prob. Code, § 221; *Estate of Jones* (1934) 3 Cal.App.2d 395, 397 [39 P.2d 847].) The right to sue for wrongful death is limited to the persons described in section 377. (*Steed* v. *Imperial Airlines* (1974) 12 Cal.3d 115, 119 [115 Cal.Rptr. 329, 524 P.2d 801, 68 A.L.R.3d 1204].) The statute formerly limited the right of action to heirs of the decedent and personal representatives of the decedent suing on the heirs' behalf. (See *Evans* v. *Shanklin* (1936) 16 Cal.App.2d 358, 360-361 [60 P.2d 554].) In 1968, section 377 was amended to permit actions to be brought by dependent parents of the decedent. (Stats. 1968, ch. 766, § 1, p. 1488.)

The trial court found, on substantial evidence, that decedent did not, during his lifetime, contribute to the support of appellants; that appellants, at the time of decedent's death, were not disabled, were both gainfully employed and were self-supporting. It concluded that, as a matter of law, appellants were not dependent parents of decedent within the meaning of section 377. Insofar as dependency for support, or what may be termed financial dependency, is concerned, the findings and conclusion are supported by substantial evidence and are binding upon this court. (*Foreman & Clark Corp.* v. *Fallon* (1971) 3 Cal.3d 875, 881 [92 Cal.Rptr. 162, 479 P.2d 362].)

---

[2] "'Judgment' includes any judgment, order or decree from which an appeal lies." (Cal. Rules of Court, rule 40(g).)

[3] The trial court entered two substantially identical decrees. The second, which was made after appellants requested and received findings of fact and conclusions of law, should be considered the final judgment in the case. The notice of appeal, however, states that the appeal is taken from the *first* decree. While this might be considered a defect in the appeal (see *Wilbur* v. *Cull* (1954) 127 Cal.App.2d 655, 656 [274 P.2d 424]), the notice of appeal should be construed to refer to the final, appealable decree. (See *Holden* v. *California Emp. etc. Com.* (1950) 101 Cal.App.2d 427, 430 [225 P.2d 634]; Cal. Rules of Court, rule 1(a); 6 Witkin, Cal. Procedure (1970) Appeal, § 336, p. 4313.)

■ Appellants argue that the term "dependent parents" as used in the statute has a meaning broader in scope than actual financial dependency. They contend that they were made dependent parents by their reliance upon decedent for comfort and affection and for support and pecuniary advantages to which they might be entitled in the future. Cases are cited which indicate that the loss of these benefits is compensable in wrongful death actions brought on behalf of parents *as heirs*. (*Bellandi* v. *Park Sanitarium Assn.* (1931) 214 Cal. 472, 481 [6 P.2d 508]; *Swails* v. *General Elec. Co.* (1968) 264 Cal.App.2d 82, 86-87 [70 Cal.Rptr. 143]; *Wheeler* v. *Brown* (1941) 47 Cal.App.2d 239, 243 [117 P.2d 707]; *Gallo* v. *Southern Pac. Co.* (1941) 43 Cal.App.2d 339, 346 [110 P.2d 1062]; *Rocca* v. *Tuolumne County Elec. etc. Co.* (1926) 76 Cal.App. 569, 588 [245 P. 468].) But we are not here concerned with the nature or extent of the recovery to which appellants might be entitled. The issue is whether they are entitled to recover at all. An example of this distinction is found in *Correia* v. *Van Camp Sea Food Co.* (1952) 113 Cal.App.2d 71 [248 P.2d 81], upon which appellants rely. There the defendants in an action for the wrongful death of a seaman brought under the Jones Act complained that the award of damages was excessive in that there had been no showing that the parents of the decedent were dependent upon him for support. The reviewing court, in the course of justifying its refusal to invalidate the award, stated that the word "dependent" had a meaning broader in scope than actual dependency. (*Id.*, at p. 83.) However, the question considered in *Correia* was merely whether the award of damages to persons entitled to recover was excessive. The court determined that the award was not excessive for the reason that it fairly compensated the decedent's parents for their pecuniary loss. (*Id.*, at pp. 83-85.) *Correia,* like the other cases relied on by appellants, did not consider the entirely different question whether certain parents were dependent so as to be proper plaintiffs under section 377.

No case has been cited and none has been found in which the statutory term "dependent parents" has been defined. However, it was stated in *Steed* v. *Imperial Airlines, supra,* 12 Cal.3d 115, that the extension of the right of action to dependent parents cured an injustice recognized in a case decided many years prior to the amendment of the statute. (*Id.,* at p. 121, fn. 4.) That case was *Evans* v. *Shanklin, supra,* 16 Cal.App.2d 358, in which an elderly and indigent mother who actually relied upon her son for support and who was statutorily entitled to such support was held to be unable to sue for her son's wrongful death on the ground that she did not qualify as an heir. (*Id.,* at pp. 362-363.) ■ If, as the comment in *Steed, supra,* suggests, section 377 was changed in

order to account for the situation involved in *Evans,* then the term "dependent parents" must be read as referring to parents who are actually dependent, at least in part, upon the decedent for support.

Such a reading of the term, moreover, accords with the rules requiring that words used in a statute be given their ordinary meaning unless a different meaning is clearly intended (*Gawzner Corp.* v. *Minier* (1975) 46 Cal.App.3d 777, 783 [120 Cal.Rptr. 344]) and that statutes be read so as to avoid making some of their words surplusage (*Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224]). Had the Legislature intended to extend the right to sue for wrongful death to all parents, there would have been no need to include the word "dependent" in section 377.

We hold that the term "dependent parents" as it was used in Code of Civil Procedure section 377 means parents who, at the time of a child's death, were actually dependent, to some extent, upon the decedent for the necessaries of life.

Appellants next contend that respondents were estopped to resist their claim for a share of the proceeds of the settlement. They assert that the existence of appellants' action and the participation of appellants in settlement negotiations contributed to the achievement of the settlement, that respondents acquiesced in this, and should not be entitled to claim that appellants have no right to share the settlement proceeds.

Appellants rely on *Changaris* v. *Marvel* (1964) 231 Cal.App.2d 308 [41 Cal.Rptr. 774]. There an action for wrongful death was brought on behalf of five claimants. Four were the surviving adult children of the decedent. The fifth claimed to be the decedent's widow. After a settlement was reached, the children argued that the widow was entitled to no part of the settlement proceeds for the reason that she had not been validly married to the decedent. The attorney who had represented the five claimants in the wrongful death suit brought an interpleader action. The judgment in the latter action ordered distribution of the bulk of the settlement funds to the widow. That judgment was based, and affirmed, on two grounds, one of which was that the children were estopped to challenge the widow's status as a claimant. The estoppel was based upon the ground that the children, whose own claims for damages in the wrongful death action were insignificant, permitted the widow to press her claim so as to increase the size of the recovery and then attempted to prevent her from sharing it. (*Id.,* at p. 314.)

The case at bench is distinguishable from *Changaris.* Here, the widow did not wait until the settlement had been achieved before attacking the claim of appellants. She asserted her adverse position and that of the child at the time of filing her petition to compromise the claim. Not only did appellants counterpetition, but their claim was heard and determined by the court at the time the petition was approved. It cannot be said, as it was in *Changaris,* that respondent made a "belated attack upon the right of [appellants] for the purpose of obtaining for [the child] money to which [he had] no claim whatever." (*Changaris* v. *Marvel, supra,* 231 Cal.App.2d 308, at p. 314.)

■ Appellants claim that the award to the child was excessive. They do not assert that the settlement figure was too large. The argument appears to be that since the child received more than he should have, the remainder, above some unspecified amount, should be awarded to the appellants. Since it has been determined that appellants are not entitled to any recovery, they have no standing to contest the amount of the award to the child. An appellate court will not undertake to determine abstract questions of law at the request of parties who show that no substantial rights can be affected by the decision. (*Keefer* v. *Keefer* (1939) 31 Cal.App.2d 335, 337 [87 P.2d 856].)

Affirmed.

Rattigan, Acting P. J., and Christian, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied June 24, 1976.